CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO, a national banking association, etc., et al., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 32761.

United States District Court
N. D. California, S. D.

Dec. 28, 1955.

Cushing, Cushing, Duniway & Gorrill, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Lynn J. Gillard, Asst. U. S. Atty., San Francisco, Cal., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Erwin A. Goldstein, Attys., Dept. of Justice, Washington, D. C., for defendant.

GOODMAN, District Judge.

This is an action by the administrator of the estate of a deceased taxpayer for the recovery of income taxes. The facts have been stipulated.

On June 11, 1946, the taxpayer received a refund of $11,041.01 of income taxes paid for the year 1942, plus interest in the amount of $1,315.29. A year later, on June 11, 1947, the taxpayer was informed by the Commissioner that the interest on the refund of 1942 taxes had been erroneously paid, and was requested to return it. Taxpayer did not do so. On July 26, 1948, taxpayer was allowed but not paid a refund of $4,031.22 of income taxes paid for the year 1945. This refund was subsequently paid to taxpayer on May 12, 1950, less however the amount of interest which the Government claimed was erroneously paid to taxpayer on the refund of the 1942 taxes, plus interest on that amount. The de-

duction was made, taxpayer was informed, because the Commissioner had on April 5, 1950 offset the claimed erroneous payment of interest on the refund of 1942 taxes against the refund due taxpayer for 1945. It is that portion of the refund for 1945 allowed but not paid to taxpayer because of the offset, that is sought to be recovered in this action.

While plaintiff does not concede that the payment by the Government of interest on the refund of 1942 taxes was in fact erroneous, it has chosen to rest its case on the contention that the offset in 1950 was not timely made. There is no limitation statute specifically fixing the time within which such an offset may be made. There is, however, a statute, limiting to two years, the time within which the United States may sue to recover erroneous refunds of taxes or erroneous payments of interest on refunds. 26 U. S.C. § 3746; United States v. Steel Furniture Co., 6 Cir., 1935, 74 F.2d 744. Since it is obvious that the offset claimed by the Commissioner must be the equivalent of a cause of action by the Government in a suit to recover the erroneous payment, the parties do not dispute that the time limitation for suit applies equally to the offset. Here the offset was not made within two years after the payment of the interest on the 1942 refund. But, the Government contends the offset was timely because the two-year limitation period was extended by a wartime statute suspending certain time limitations relating to internal revenue taxes.

The suspension statute, 56 Stat. 957, 26 U.S.C.A. § 3804, authorized the disregarding of periods of time in which a taxpayer was outside the Americas during World War II in determining "in respect of any tax liability (including any interest, penalty, additional amount, or addition to the tax)" whether certain specified acts were performed within the requisite time. Among these acts was "bringing suit by the United States, or any officer on its behalf, in respect of any liability in respect of any tax." The taxpayer here was continuously outside the Americas from the time of the enactment of the suspension statute until her death on April 5, 1949. Thus the Government contends that the suspension statute operated to extend the time in which suit might have been brought to recover the interest paid on the 1942 refund, and consequently the time in which the offset could be made. Plaintiff urges that the suspension statute did not apply to suits to recover erroneous refunds or interest thereon, and, alternatively, that, even if it did, it did not sufficiently extend the time to make timely the offset on April 5, 1950.

■ In my opinion plaintiff is right in both respects. The suspension statute does not specifically refer to suits for the recovery of erroneous refunds or interest thereon. The statutory definition "suit * * * in respect of any liability in respect of any tax", might, as the Government suggests, be broadly interpreted to include a suit for the recovery of an erroneous refund or interest thereon. But, such a broad interpretation is not warranted. The Congress obviously did not attempt to make the statutory list of acts, to which the suspension statute was applicable, all inclusive, because it provided that other acts might be brought, by regulation, within the statute. The statute limiting the period in which suit may be brought to recover erroneous refunds was enacted at a different time and is included in the Internal Revenue Code apart from the statutory provisions limiting the time in which suits may be brought on tax liability. It is therefore, likely, that had the Congress intended the suspension statute to apply to suits to recover refunds it would have separately and specifically mentioned them in that statute. Certainly the description "suit * * * in respect of any liability in respect of any tax", is inapt to describe a suit to recover an erroneous refund or interest thereon. Such a suit is in fact one for money paid under mistake. It is not a suit "in respect of any liability in respect of any tax", because any tax liability was satisfied when the tax was originally paid.

A more detailed description of the suspension statute is necessary in order to appraise plaintiff's alternative contention that the statute, assuming its applicability, did not sufficiently extend the time within which suit might have been brought to make the offset timely. The suspension statute was part of the Revenue Act of 1942, and was included in the Internal Revenue Code of 1939, as amended, as Section 3804.[1] Subsection (a) of section 3804 provided that periods of time in excess of 90 days in which a taxpayer was continuously outside the Americas should automatically be disregarded in determining whether various specified acts were timely performed. Subsection (b) of section 3804 provided that "in any case to which subsection (a) does not apply" and in which the Commissioner found that the absence of an individual from the Americas (or certain other specified circumstances) made it impossible or impracticable to perform, within the limitation period, any of the acts specified in subsection (a), he, the Commissioner, might, by regulation, fix a period of time to be disregarded. Subsection (c) of section 3804 originally provided that no period of time should be disregarded under either subsection (a) or (b) after the fifteenth day of the third month following the month in which World War II was terminated by proclamation of the President. On August 8, 1947, after World War II had ended, but before it was officially terminated, the Congress amended subsection (c), 61 Stat. 919. As amended, subsection (c) provided that no period of time should be disregarded under subsection (a) after December 31, 1947, but that periods of time might be disregarded under subsection (b) until such date after December 31, 1947 as the Commissioner might fix. Thereafter, by regulation, the Commissioner provided that periods of time might be disregarded under subsection (b) until June 15, 1948, T.D.5610, 13 F.R. 1477.

The offset here was made on April 5, 1950, more than two years after December 31, 1947, the ultimate date to which the period of limitation might have been suspended under subsection (a), but less than two years after June 1, 1948, the ultimate date to which the limitation period might have been suspended under subsection (b). Thus, the offset was timely only if taxpayer's continuous absence from the Americas until her death in 1949 afforded a basis for the disregarding of time under subsection (b). Plaintiff urges that the period of time to be disregarded under the suspension statute by reason of the continuous absence of a taxpayer from the Americas for more than ninety days is specified exclusively by subsection (a), since subsection (b) by its terms is applicable only "in any case to which subsection (a) does not apply." The Government contends that subsections (a) and (b) are not mutually exclusive and that the continuous absence of a taxpayer from the Americas for more than 90 days would afford the basis for disregarding time under both sections. It notes that the Congressional Committee report on the bill which amended section 3804 in 1947, states that subsection (b) "provides a basis for disregarding periods of time which may not be disregarded under subsection (a) or for disregarding a period of time in addition to that disregarded under subsection (a), and * * * is broader in scope than subsection (a)." House Report 802, 80th Congress, 1st session; 1947 U.S.Code Congressional Service, pp. 1668, 1675. It does not follow, however, that an additional period of time may be disregarded under subsection (b) as a consequence of the same circumstances for which time is disregarded under subsection (a). As the Committee report notes, subsection (b) is broader than subsection (a). Periods of time may be disregarded under subsection (b) because of the absence of the taxpayer from the Americas for less than 90 days, and also because of the

---

1. Section 3804, excepting subsections (d), (e), and (f), not here pertinent, follows as appendix A.

absence of persons other than the taxpayer. Consequently, in respect to any particular tax liability, a period of time might be disregarded under subsection (a) because of the absence of the taxpayer from the Americas on one occasion for more than 90 days, and an additional period might also be disregarded under subsection (b) because of his absence on some other occasion for less than 90 days or because of the absence of some other person. But, the statutory language does not permit the disregarding of a period of time under subsection (b) solely because of the continuous absence of the taxpayer from the Americas for more than ninety days, *in addition* to the time to be disregarded under subsection (a). If this were permissible, the statutory provision that time may be disregarded under subsection (b) "in any case to which subsection (a) does not apply" would be rendered wholly nugatory. It is true that the regulations promulgated pursuant to the statute by the Commissioner appear to sanction such a practice. One of the original regulations promulgated under the statute reiterated the period of time specified in subsection (a) as the period of time to be disregarded because of the continuous absence of a taxpayer from the Americas for more than 90 days, without stating whether the regulation pertained to subsection (a) or (b), 26 C.F.R. §§ 472.501, 472.502, 472.503 (1943 Supplement). After the 1947 amendment to the suspension statute fixed December 31, 1947 as the ultimate date for the disregarding of time under subsection (a), and authorized the Commissioner to fix the ultimate date for the disregarding of time under subsection (b), the Commissioner amended the regulation concerning continuous absences of a taxpayer from the Americas for more than 90 days to provide that time might be disregarded under such regulation until June 15, 1948. 26 C.F.R. §§ 472.501, 472.502, 472.503 (1949 edition). This amendment was apparently made in the belief that time might be disregarded under subsection (b) because of the absence of the taxpayer from the Americas continuously for more than 90 days. But, in so far as this regulation might be thus applied, it must be held to be beyond the authority conferred by the statute.

In addition to the fact that subsection (b) is inapplicable to the same circumstances to which subsection (a) applies, there is still another reason why subsection (b) was ineffective to make the offset here timely. The disregarding of time under subsection (b) because of the absence of an individual from the Americas is conditioned on a determination by the Commissioner that such absence makes it impossible or impracticable to perform an act within the limitation period. It is not contended that the Commissioner determined in this case that it was impossible or impracticable to have made the offset within the limitation period because of the taxpayer's absence from the Americas. There would have been no basis for such a determination because the Commissioner had notified taxpayer that the interest paid on the refund was erroneous and had funds in his possession against which the offset could have been made, long before the limitation period expired. The Commissioner's blanket regulation providing for the disregarding of time until June 15, 1948 in all cases in which a taxpayer was continuously absent from the Americas in excess of 90 days cannot reasonably be said to constitute the determination of impracticability or impossibility contemplated by the statute.

Since the taxpayer's continuous absence from the Americas for more than ninety days affords the basis for disregarding time only under subsection (a) of the suspension statute, no period of time could be disregarded beyond the cut-off date applicable to subsection (a). Thus, the period in which the offset could have been validly made expired on January 1, 1950, and it was not timely, even if the suspension statute were applicable to extend the limitation period on suits for the recovery of erroneous refunds or erroneous payments of interest on refunds.

Judgment will enter for plaintiff upon findings presented according to the Rules.

### Appendix A.

1. "Sec. 3804. Time for performing certain acts postponed by reason of war.

"(a) Individuals. The period of time after December 6, 1941, during which an individual is continuously outside the Americas (if such period is longer than ninety days), and the next ninety days thereafter, shall be disregarded in determining, under the internal revenue laws, in respect of any tax liability (including any interest, penalty, additional amount, or addition to the tax) of such individual—

"(1) whether any of the following acts was performed within the time prescribed therefor:

"(A) filing any return of income, estate, or gift tax (except income tax withheld at source and income tax imposed by Chapter 9 or any law superseded thereby);

"(B) payment of any income, estate, or gift tax (except income tax withheld at source and income tax imposed by Chapter 9 or any law superseded thereby) or any installment thereof or of any other liability to the United States in respect thereof:

"(C) filing a petition with the Board of Tax Appeals for redetermination of a deficiency, or for review of a decision rendered by the Board.

"(D) allowance of a credit or refund of any tax;

"(E) filing a claim for credit or refund of any tax;

"(F) bringing a suit upon any such claim for credit or refund;

"(G) assessment of any tax;

"(H) giving or making any notice or demand, for the payment of any tax, or with respect to any liability to the United States in respect of any tax;

"(I) collection, by the Commissioner or the collector, by distraint or otherwise, of the amount of any liability in respect of any tax;

"(J) bringing suit by the United States, or any officer on its behalf, in respect of any liability in respect of any tax; and

"(K) any other act required or permitted under the internal revenue laws specified in regulations prescribed under this section by the Commissioner with the approval of the Secretary;

"(2) The amount of any credit or refund (including interest).

"(b) Other taxpayers and other circumstances. In any case to which subsection (a) does not apply in which it is determined by the Commissioner, under regulations prescribed by him with the approval of the Secretary, that—

"(1) By reason of an individual being outside the Americas, or

"(2) By reason of any locality (within or without the Americas) being an area of enemy action or being an area under the control of the enemy, as determined by the Commissioner, or

"(3) By reason of an individual in the military or naval forces of the United States being outside the States of the Union and the District of Columbia,

it is impossible or impracticable to perform any one or more of the acts specified in subsection (a), then in determining, under the internal-revenue laws whether such act was performed within the time prescribed therefor, in respect of any tax liability (including any interest, penalty, additional amount, or addition to tax) affected by the failure to perform such act within such time and in determining the amount of any credit or refund (including interest) affected by such failure, there shall be disregarded such period aft·

er December 6, 1941, as may be prescribed by such regulations.

"(c) Limitation on Time To Be Disregarded.—The period of time disregarded under this section shall not extend beyond whichever of the following dates is the earlier:

"(1) the fifteenth day of the third month following the month in which the present war with Germany, Italy, and Japan is terminated, as proclaimed by the President; or

"(2) in the case of an individual with respect to whom a period of time is disregarded under this section, the fifteenth day of the third month following the month in which an executor, administrator, or a conservator of the estate of such individual qualifies."