PACIFIC GAS AND ELECTRIC
COMPANY and PG & E
Corporation, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 98–789 T.

United States Court of Federal Claims.

Feb. 20, 2003.

Craig M. Buchsbaum, San Francisco, CA, for plaintiff.

William C. Rapp, with whom were Eileen J. O'Connor, Assistant Attorney General, and Mildred L. Seidman, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION

HEWITT, Judge.

Plaintiffs, Pacific Gas and Electric Company and PG & E Corporation (collectively, plaintiff or PG & E) seek recovery in this action for a refund of additional overpayment interest plus interest accruals relating to tax year 1982. Complaint *passim*. Specifically, plaintiff alleges that a 1992 refund payment was too low because of an illegal offset procedure employed by the Internal Revenue Service (Service). *See id.* ¶¶ 18, 19. Now before the court are the Motion of Pacific Gas and Electric Company and PG & E Corporation for Summary Judgment and Brief in Support Thereof (Pl.'s Mot.) and the Cross–Motion of the United States for Summary Judgment and Brief in Support Thereof, and in Opposition to Plaintiff's Motion for Summary Judgment (Def.'s Mot.).

The dispute revolves around two central issues. First, the parties dispute whether the "erroneous overpayment" should be characterized as consisting of "excess overpayment interest" or an "erroneous refund" and whether the statute of limitations barring collection of erroneous refunds after two years applies. Second, the parties dispute the applicability of *Lewis v. Reynolds*, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932), and subsequent cases addressing the circumstances in which the Service may offset taxpayer liabilities against taxpayer refund claims.

Plaintiff argues that the Service cannot recover its erroneous overpayment through the offset procedure used here. Plaintiff contends that the erroneous overpayment the Service paid to PG & E in 1988 was an "erroneous refund" and that the statute of limitations to recover an erroneous refund contained in I.R.C. § 7405 had expired prior to the date the Service brought this action. Pl.'s Mot. at 12–15. Plaintiff also contends that the "erroneous refund" consisted solely of overpayment interest, with the result that the Service cannot recover it by assessment or administrative collection procedures available to collect a tax deficiency or liability. *Id.* at 15–16. Further, plaintiff argues that the *Lewis v. Reynolds* doctrine does not authorize the offset procedure used in this case.

*Id.* at 16–18. Plaintiff also contends that there are strong policy reasons for limiting the recovery of an erroneous refund to suit under I.R.C. § 7405. *Id.* at 18–20. These reasons include the avoidance of "double taxation." Plaintiff contends that "double taxation" occurred here because it had the use of only 60% of the erroneous overpayment, the amount remaining after taxes, while the government recovered 100% of the erroneous overpayment through its offset. *Id.* at 18–19. Finally, plaintiff argues that the Service was not entitled to recover interest on the erroneous overpayment, even if the Service can recover the erroneous overpayment itself. *Id.* at 20–22.

Defendant argues that plaintiff in fact seeks to have the government pay the same amount twice, plus interest. Transcript of Oral Argument on December 18, 2002(Tr.) at 36. Defendant contends that the statute of limitations under I.R.C. § 7405 has no bearing on this case because the government never brought a suit to recover an erroneous refund. Def.'s Mot. at 9–11 (citing I.R.C. § 6532(b)). Further, defendant argues that *Lewis v. Reynolds* and its progeny authorize the offset procedure used in this case when the Service is faced with a refund claim with respect to the same taxpayer, and the same tax year as to which the Service seeks to make the offset. *Id.* at 11–16. Defendant argues that any harm to plaintiff due to so-called "double taxation" problems was addressed by the Service in adjustments made in 1992. *Id.* at 17–18. Finally defendant argues that the Service did not recover interest on the erroneous overpayment; it simply refused to pay interest on overpayment interest already delivered to plaintiff. *Id.* at 18–19.

For the following reasons, plaintiff's Motion for Summary Judgment and defendant's Cross–Motion for Summary Judgment are both GRANTED IN PART and DENIED IN PART.

## I. Background

This dispute has its origins in 1983 when PG & E filed its income tax return for tax year 1982. Stipulation of Facts (Jt.Stip.) ¶ 5.

Plaintiff reported a tax liability of $401,284,337, which plaintiff later increased to $405,571,988.90.[1] *Id.* ¶ 5, 8. Plaintiff paid this amount in full on January 27, 1984. *Id.* ¶ 8, Table 3. As finally determined in 1994, however, plaintiff's correct tax liability for 1982 was $291,020,158. *Id.* ¶ 6.

While attempts began to correct this problem in April of 1985, *id.* ¶ 9, the transactions material to this case began in 1988, when the Service attempted to calculate overpayment interest due plaintiff with respect to tax year 1982. As the parties stipulated, in 1988 overpayment interest was due on an overpayment of $36,998,114, to which was added the amount of $789,986.93 in deficiency interest,[2] for a total of $37,788,101. *Id.* ¶ 11. The Service calculated this interest to be $28,203,245.13. *Id.,* Table 4. This calculation involved a mistake, however. The Service had calculated interest as if plaintiff's installation payment, made on June 20, 1983, had instead been made on March 15, 1983. Defendant's Proposed Findings of Uncontroverted Fact (DPFUF) ¶ 1.[3] If the interest had been computed correctly, plaintiff would have been paid only $24,832,699.87. *Id.* ¶ 2. The payment to the taxpayer of $28,203,245 in 1988 included an erroneous overpayment of $3,370,545.13. Jt. Stip. ¶ 11. The record is silent on whether the erroneous overpayment of $3,370,545.13 was noticed by either party; but in any event, it was not corrected at the time.

The 1988 mistake came to the surface in 1992, when plaintiff requested another refund with respect to tax year 1982. Jt. Stip. ¶ 13. In reviewing the refund request, the Service analyzed the 1988 refund request and determined that all but $627,921 of the 1988 overpayment of $3,370,545.13 was actually owed to the plaintiff. *See* Pl.'s Mot. at 10 n. 5; Def.'s Mot. at 17. The $627,921 that the Service determined was not owed plaintiff was used as an offset against plaintiff's re-

fund of $6,347,389, so that plaintiff received a total of $5,719,467.52. Jt. Stip. ¶ 14, Table 6. Plaintiff was also allowed a deduction from its taxable income for 1992 of $627,921 to account for the downward adjustment to its refund. Def.'s Mot. at 18. Plaintiff's tax year 1982 overpayment was finally resolved on September 29, 1994, when the Service made its final refund payment to plaintiff. Jt. Stip. ¶ 16.

## II. Discussion

### A. Summary Judgment

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rules of the United States Court of Federal Claims (RCFC) 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact that might significantly affect the outcome of the litigation is material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Id.* at 247–48, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir.1987). The movant is also entitled to summary judgment if the non-movant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. The

---

1. In March of 1984, plaintiff reported additional tax in the amount of $3,497,665. Jt. Stip. ¶ 7. Plaintiff had originally reported total tax due of $404,782,002, some of which was unpaid as of the due date of March 15, 1983. *Id.* Plaintiff therefore owed underpayment interest, raising its total tax liability to $405,571,988.90. *Id.* ¶ 7, Table 2; ¶ 8.

2. This deficiency interest had been previously assessed but was abated at the same time the overpayment amount was calculated. Jt. Stip. ¶ 11.

3. The facts relied on in this opinion and cited to only one of the parties' Proposed Findings of Uncontroverted Fact or other filings do not appear to be in dispute.

court must resolve any doubts about factual issues in favor of the party opposing summary judgment. *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). When the case is before the court on cross-motions for summary judgment, each motion is evaluated under the same standard. *Cubic Defense Sys., Inc. v. United States*, 45 Fed.Cl. 450, 457 (1999).

## B.  Legality of the Offset

Plaintiff argues that the excess overpayment interest was an erroneous refund, and that the statutory framework does not allow the Service to make the 1992 offset. Pl.'s Mot. at 12–13.[4] Because this was an erroneous refund, plaintiff contends that it may only be recovered in a suit by the government under I.R.C. § 7405. *Id.* at 13. The statute of limitations for such a suit is two years, and because the offset occurred after the statute of limitations had expired, the Service's right to offset is now time-barred. *Id.* at 14 (citing I.R.C. § 6532(b)).

Defendant argues that the statute of limitations has no bearing in this case because the government has never brought suit to recover the amount erroneously paid to plaintiff in 1988. Tr. at 36–37. Defendant claims that its actions were merely an adjustment to correct an earlier mistake, and this adjustment is lawful under the case law relevant to this case. Def.'s Mot. at 11.

Defendant argues that a line of cases justifies its administrative offset, beginning with the Supreme Court's 1932 decision in *Lewis v. Reynolds*. According to defendant, *Lewis* and its progeny stand for the proposition that "all facts touching on the taxpayer's liability for the tax and the year at issue must be considered to determine whether they support the taxpayer's claim that he is entitled to a refund." Def.'s Mot. at 12. Defendant particularly relies as well on *Dysart v. United States*, 169 Ct.Cl. 276, 340 F.2d 624 (1965), for support for its position that "the Government's right of setoff [is] unconditional where the defense concerns the same tax, the same tax year, and the same taxpayer as the refund claim." *Id.* at 14. Because this dispute concerns the same tax, the same tax year, and the same taxpayer, defendant argues, the Service's action was justified. *See id.* at 15–16.

Plaintiff counters that *Lewis* and its progeny "stand for the proposition that a taxpayer cannot obtain a claimed overpayment for a

---

4.  Plaintiff's argument on this point has evolved somewhat over time. While plaintiff acknowledged in its original brief that it was entitled to a portion of the overpayment if the 1992 and 1994 adjustments were taken into effect, plaintiff argued that "no IRS procedures authorize or even contemplate such an advanced payment and it is undisputed that when the July 5, 1988, refund was issued the Service did not consider (and indeed could not have had any knowledge of) the fact that additional tax decreases for 1982 would be determined." Pl.'s Mot. at 13. This gave rise to plaintiff's memorable argument that "[w]hile the IRS admittedly has broad powers, foretelling the future is not among them." *Id.*

In its response brief, plaintiff continued to argue that "defendant has neither identified any circumstances in which the IRS would knowingly pay a taxpayer overpayment interest on a tax decrease that had not yet been determined, nor has it cited any provision of the Internal Revenue Manual or any other authorities that contemplate or sanction such a procedure." Response of Pacific Gas and Electric Company and PG & E Corporation to Defendant's Cross–Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment (Pl.'s Resp.) at 6–7. But plaintiff also urged that at least some of the erroneous overpayment was an "erroneous refund." Plaintiff argues that, "[s]ince at a minimum $364,687.67 of the excess overpayment interest paid to the Taxpayer in July 1988 cannot be an advance or pre-payment, one might ask that if it is not an erroneous refund to at least that extent, what is it?" *Id.* at 7–8. Finally, at oral argument, plaintiff explicitly distinguished the excess overpayment that it was not entitled to even if the 1992 and 1994 adjustments were accounted for from the extra overpayment interest it actually received. Tr. at 12–14. Plaintiff also presented the court with a chart at oral argument that separated the money that was paid to it in July 1988 into amounts that were actually owed at that time, that would have been owed if the 1992 and 1994 adjustments were accounted for, and approximately $365,000 that both plaintiff and defendant agreed was not owed regardless of those adjustments. *See* Tr. at 14–15, 40–41; DPFUF ¶ 4. This $365,000 (with interest) eventually became the $627,921 that the court discusses in Part II.C below.

particular tax year and type of tax if it has, in fact, underpaid its tax (or related interest and/or penalties), even though the assessment of such un[der]paid tax, interest, or penalty is barred by the running of the applicable statute of limitations." Response of Pacific Gas and Electric Company and PG & E Corporation to Defendant's Cross–Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment (Pl.'s Resp.) at 9. Here, plaintiff clearly has not underpaid its taxes; what is at issue is the refund with respect to plaintiff's overpayment of tax in 1982. *Id.* Plaintiff also notes that *Lewis* and its progeny involve penalties or underpayment interest, while this case involves a refund of overpayment interest. *Id.* at 8–9. Plaintiff points out that overpayment interest is not assessed and collected in the same manner as penalties or underpayment interest under the Code, and does not otherwise require identical treatment. *Id.* at 9 (citing I.R.C. § 6601(e) and *Marsh & McLennan Cos. v. United States,* 302 F.3d 1369, 1378 (Fed.Cir.2002)).

Plaintiff also argues that the relevant case law refers the court back to the statutory framework. According to plaintiff, *United States v. Steel Furniture Co.,* 74 F.2d 744 (6th Cir.1935), found that "section 610 of the Revenue Act of 1928 (the predecessor of current sections 7405 and 6532) applied to a suit by the Government to recover an erroneous payment of interest on a tax refund." Pl.'s Mot. at 14. Further, "[t]he court's reasoning was that the statute was enacted to grant taxpayers repose from suits for erroneous refunds and should be interpreted broadly to protect a taxpayer from the expense and annoyance of a suit to recover an erroneous payment of interest on a tax refund where recovery of the refund itself would be barred." *Id.* Plaintiff also notes that a court has treated an offset of erroneously refunded interest of 1942 taxes against an overpayment in 1945 in the manner as a suit to recover an erroneous refund, and required that suit be brought within the statute of limitations under I.R.C. § 7405. *Id.* at 16 (citing *Crocker First Nat'l Bank of San Francisco v. United States,* 137 F.Supp. 573 (N.D.Cal.1955)). Plaintiff argues, "If the IRS will instead be permitted to perform an offset as a means of recovering an excess payment of overpayment interest, its right to do so should be embodied in a procedure based on a statute or regulation that is fair to the Government and taxpayer alike, rather than 'created' in case law." Pl.'s Resp. at 10.

Defendant counters that *Steel Furniture* and *Crocker* are distinguishable from the case at hand. *Steel Furniture* was indisputably an erroneous refund suit as distinguished from this case, which involves an offset. Tr. at 49. In *Steel Furniture,* the statute of limitations was applicable by its terms. *Id. Crocker* involved crediting between different tax years, unlike this case, which involves only the 1982 tax year. Tr. at 48. For defendant, the issue is resolved by *Lewis* itself, where the Supreme Court stated:

While the statutes authorizing refunds do not specifically empower the Commissioner to reaudit a return whenever repayment is claimed, authority therefor is necessarily implied. An overpayment must appear before [a] refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.

Def.'s Mot. at 12 (quoting *Lewis,* 284 U.S. at 283, 52 S.Ct. 145). This leads defendant to conclude that:

It's the same taxpayer for the same tax for the same year, and so at any particular time when the taxpayer presents itself to the government, administratively or in court, the question is, does the government owe the taxpayer any money?

Tr. at 47. According to defendant, then, what the Service did in this case was a legal use of its power to determine what was owed the taxpayer. *See* Def.'s Mot. at 20.

Defendant's position is that *Lewis* and its progeny place some tools at the Service's disposal that are not specifically identified in the Code or its accompanying regulations. *See id.* at 11–16. That line of authority supports the use of offsets in certain circum-

stances not in conflict with the Code or regulations. *See, e.g., Dysart,* 169 Ct.Cl. at 281–82, 340 F.2d 624.

Plaintiff has suggested several possible points of conflict between the Code and the offset the Service made in this case. Plaintiff notes that I.R.C. § 6402 allows the Service to credit an overpayment against any other federal tax liability that the taxpayer has, but correctly states that there was no tax liability at the time of the overpayment of interest here. Pl.'s Mot. at 8–9. The court agrees that I.R.C. § 6402 does not cover the offset in this case. But neither does I.R.C. § 6402 forbid it.

Plaintiff characterizes the overpayment as an erroneous refund, and argues that I.R.C. § 7405 provides the only means to recover these funds. *Id.* at 10. The court agrees that the bar of I.R.C. § 7405 would have prevented a suit after two years to the extent the 1988 overpayment could be characterized as an erroneous refund. However, there is no provision in the Code forbidding the administrative remedy the Service chose here.

*Lewis* involved a deficiency assessed after an audit of the taxpayer's 1920 taxes in 1925. 284 U.S. at 282, 52 S.Ct. 145. The deficiency was paid in 1926, and the taxpayer sought a refund later that year. *Id.* In 1929, the Commissioner denied the refund, on the basis that a deduction allowed in the earlier audit was unlawful. *Id.* The taxpayer challenged the Commissioner's 1929 assessment as falling outside of the then five-year statute of limitations, and argued "that the Commissioner lacked authority to redetermine and reassess the tax after the statute had run." *Id.* at 282–83, 52 S.Ct. 145. The Court affirmed the Commissioner's decision:

While no new assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax. The action to recover on a claim for refund is in the nature of an action for money had and received, and it is incumbent upon the claimant to show that the United States has money which belongs to him.

*Id.* at 283, 52 S.Ct. 145 (citing *Lewis v. Reynolds,* 48 F.2d 515, 516 (10th Cir.1931)).

The Federal Circuit has also spoken to this issue in *Dysart* and, more recently, in *Fisher v. United States,* 80 F.3d 1576 (Fed.Cir.1996). In *Dysart,* the taxpayer sought a refund of an erroneously collected penalty for the year 1954. 169 Ct.Cl. at 278, 340 F.2d 624. The government conceded that the penalty was collected in error, but claimed a setoff that exceeded the penalty.[5] *Id.* at 278–80, 340 F.2d 624. This setoff was calculated after the statute of limitations had expired, and was used only to reduce the taxpayer's refund to zero. *Id.* at 280, 340 F.2d 624. The court differentiated between setoffs that involved different types of taxes, tax years, or taxpayers, and setoffs that involved the same tax by the same taxpayer in the same year. *Id.* at 281, 340 F.2d 624. In cases involving different taxes, tax years, or taxpayers, the offset must involve a single transaction to ensure that the equities are balanced. *See id.* When the situation involved the same tax by the same taxpayer for the same year, "the government's right to raise such a defense is unconditional and need not meet the 'same transaction' requirement of the equitable recoupment defense." *Id.*

*Fisher* involved an offset of previously unassessed interest on an underpayment of tax, the assessment of which was then barred

---

5. The taxpayers had been assessed a penalty for the 1954 tax year because they had underestimated their tax for that year. *Dysart,* 169 Ct.Cl. at 279, 340 F.2d 624. In their income tax return for that year, the taxpayers had also treated the proceeds of a judgment in their favor as capital gains rather than ordinary income; an audit accepted this treatment, but treated the interest on this judgment as ordinary income and assessed a deficiency against the taxpayers. *Id.* at 280, 340 F.2d 624. The taxpayers conceded this issue, and paid the assessed deficiency. *Id.* After an appeals court had ruled that the penalty as-

sessed for the 1954 tax year was not allowed, the taxpayers filed a refund request in 1958. *Id.* The Service acknowledged that it was not entitled to the penalty, but claimed that the judgment should have been treated as ordinary income, not capital gains. *Id.* The Service then subtracted this new amount owed from the penalty to be returned to the taxpayers. *Id.* A full recognition of the offset would have resulted in an increased tax liability but, because the statute of limitations barred a suit for the deficiency, the result was to reduce the taxpayers' refund to zero. *Id.*

by the statute of limitations, against a tax refund. 80 F.3d at 1577. The court there saw "no convincing reason why, for purposes of offset, interest should be treated any differently than other components of tax liability [allowed as offsets in *Lewis* and *Dysart* ]." *Id.* at 1580. Accordingly, the court found that the offset of interest against a refund requested by the same taxpayer for the same tax year was valid. *Id.* at 1581.

*Crocker*, however, involved different tax years, specifically the offsetting of erroneously paid interest for tax year 1942 against a refund for tax year 1945. 137 F.Supp. at 573. In *Crocker*, the government conceded that the statute of limitations applied to the offset because "[I]t is obvious that the offset claimed by the Commissioner must be the equivalent of a cause of action by the Government in a suit to recover the erroneous payment ...." *Id.* at 574. The only issue left in the case was whether a wartime suspension statute applied to the facts at hand. *Id.*

*Marsh & McLennan*, also cited by plaintiff, did not involve a dispute over the legality of an offset affecting the same tax, taxpayer, and tax year, but rather the computation of interest on certain overpayments. 302 F.3d at 1373 ("The question is whether credit elect overpayments must be taken into account in calculating the interest due on other overpayments."). Because the issue of whether the government could use the type of offset it seeks to use here was not litigated in either *Crocker* or *Marsh & McLennan*, these cases have limited persuasive value for the court.

*Steel Furniture*, on which plaintiff also relies, was a suit brought by the Service to recover an erroneous interest payment from the taxpayer. 74 F.2d at 744. Because the case involved a suit to recover monies, the court found that the statute of limitations applied and barred recovery. *Id.* at 744–45. Because *Steel Furniture* involved a claim by the government rather than an offset, the court agrees with defendant that it does not control this case.

The most clearly applicable precedents, *Lewis, Dysart*, and *Fisher*, all contemplate the allowance of an offset by the government when, as here, the same tax, taxpayer, and tax year are at issue. Plaintiff has attempt-ed to distinguish the facts of this case from *Lewis* and *Fisher*. Plaintiff argues that *Lewis* "is clearly distinguishable from PG & E's case, which involves an erroneous refund of overpayment interest," while *Lewis* involved a redetermination of tax. Pl.'s Mot. at 16. *Fisher* is distinguishable, according to plaintiff, because that involved an underpayment, while this case involves an overpayment. *Id.*

■ The court does not find plaintiff's arguments for distinguishing these precedents compelling. The most important fact for the court is that this case involves the same tax, with the same taxpayer, for the same tax year. As the Court of Appeals for the Federal Circuit stated in *Fisher*, "*Lewis* and *Dysart* together stand for the proposition that the government may offset against a tax refund claim *any* additional amounts the taxpayer owes with respect to the tax shown on the return, even though the statute of limitations would bar assessing the additional amount owed." 80 F.3d at 1579 (emphasis added). Here, plaintiff received an amount in overpayment with respect to tax year 1982. By requesting another refund in 1992 with respect to tax year 1982, plaintiff opened the door to the Service's offsetting the 1988 overpayment amount. Therefore, the Service's action in 1992 was legal.

## C. Practical Effect of the Offset

■ There remains the question as to whether the Service implemented the offset correctly. While neither party is certain of precisely how the offset was calculated, Def.'s Mot. at 8, Pl.'s Reply at 10, plaintiff has posited what it believe to have occurred:

First, the IRS computed overpayment interest through July 5, 1988, on the full amount of the tax overpayment determined in 1992. Second, the Service compared that amount to the amount of excess interest paid to PG & E in July 1988 and apparently determined that even if the 1992 tax decrease was taken into account, the Taxpayer had received $627,921 too much overpayment interest in 1988. Therefore, the IRS reduced the tax (i.e., principal) portion of the overpayment from

$6,347,389 to $5,719,467.52 so as to recover $627,921 of erroneously-refund[ed] over-payment interest. Finally, the IRS computed overpayment interest on the reduced overpayment of tax/principal of $5,719,467.52 through the date it issued a refund.

Pl.'s Mot. at 10 n. 5. Plaintiff argues that this procedure was

> fundamentally flawed insofar as [it] (1) failed to take into consideration the fact that PG & E paid federal and state income tax on the erroneously-refunded overpayment interest at a combined rate of 40 percent, (2) *compelled the Taxpayer to forego a nontaxable refund of overpaid tax in the amount of $627,921 in exchange for an equivalent amount of fully taxable overpayment interest,*[6] and (3) did not result in any notification to PG & E regarding the actions the IRS took and why it took them, leaving it up to PG & E and its advisors to try to navigate the computational maze created by the Service.

*Id.* at 10–11 (emphasis added).

Defendant counters that none of these transactions in fact resulted in the losses plaintiff claims to have suffered. Defendant points to the undisputed facts that not only did plaintiff pay less income tax in 1992 because it received less overpayment interest that year due to the erroneous payment in 1988, but also that plaintiff was allowed a deduction for the $627,921 adjustment to its refund of tax in 1992. Def.'s Mot. at 17–18. Accordingly, "neither the payment in 1988 of overpayment interest which would not normally have been paid until 1992 or 1994, nor the adjustment made in 1992 to recoup the 'excess' overpayment interest, had the effect of subjecting any part of that interest to a double income tax, nor was any amount included as taxable income which should not have been." *Id.* at 18.

Defendant also argues that it would place an "overwhelming, crushing burden" on the Service to explain to every taxpayer how it came to its conclusions. Tr. at 51. And in terms of "moral fault," defendant argues that the government which failed to explain itself and the taxpayer who did not recognize or acknowledge it received over $3 million too much are "at least even." *Id.* at 52.

While the court agrees with plaintiff that more could have been done by the Service to explain the adjustments made in 1992, the court is aware of no authority which requires that the Service do any more than it did. The court also agrees with defendant that by allowing a deduction in 1992, it cured any possible "double taxation" problem that could have arisen because of the erroneous payment in 1988. This is because the $627,921 was not fully taxable overpayment interest; it was a tax-free windfall for plaintiff, because plaintiff was able to deduct that exact amount. This fact, about which there is no dispute (Tr. at 17–18, Def.'s Mot. at 17–18), cures any potential "double taxation" problem plaintiff may have faced.

■ Plaintiff also argues that the Service was not entitled to recover interest on the erroneous overpayment in 1988. Pl.'s Mot. at 20. Plaintiff argues that "[p]ursuant to IRC § 6602, the IRS may only recover interest on an erroneous refund 'which is recoverable by suit pursuant to section 7405.'" *Id.* Because the erroneous overpayment "is not recoverable by suit because the period of limitations for filing such a suit has long since expired," plaintiff contends that the Code precludes the recovery of interest here. *Id.* Plaintiff argues that "by not paying PG & E overpayment interest on $3,478,139.44 from 1988 forward, the IRS, for all intents and purposes, charged PG & E interest on that erroneously-refunded amount." *Id.* at 21.

Defendant counters that "plaintiff's citation of an authority with respect to the imposition of underpayment interest on an erroneous refund recovered via suit pursuant to

---

**6.** Plaintiff argues here that "reducing the principal (i.e., tax) component of PG & E's 1982 overpayment by a portion ($627,921) of the overpayment interest erroneously refunded in 1988 was improper on its face because a refund of tax is not taxable, while all of the overpayment interest refunded to PG & E was ... taxable." Pl.'s Mot. at 18. According to plaintiff, "[W]ho would willingly accept overpayment interest that is taxable at a combined federal/state rate of 40 percent in lieu of a tax-free refund of overpaid tax, plus overpayment interest thereon?" *Id.*

§ 7405 is inapposite." Def.'s Mot. at 18. According to defendant, this case "involves neither imposition of underpayment interest (imposed by § 6601), nor recovery of an erroneous refund via suit." *Id.* Defendant argues that:

> The effect of not paying overpayment interest to plaintiff from 1988 forward on the $3,478,139.44 actually refunded to plaintiff in 1988 is to pay interest only on that amount which was actually owed to plaintiff. Had the IRS paid overpayment interest on the $3,478,139.44 refund from 1988 forward, it would have paid overpayment interest on an amount which had already been paid to plaintiff. This is not the law.

*Id.* at 19.

The court agrees with defendant that it was not required to pay interest on the erroneous overpayment from 1988 forward. Plaintiff enjoyed use of this money. Requiring interest to be paid on it would, in effect, hand plaintiff a windfall. Plaintiff has shown the court nothing in the law that requires this result, and the equities are certainly not in plaintiff's favor. Accordingly, the Service acted well within its authority in declining to pay interest on the $3,478,139.44 from 1988 forward.

The court is concerned with one remaining issue, however. The parties agree that most of the overpayment made to plaintiff in 1988 was actually owed to plaintiff after taking into account the 1992 and 1994 adjustments. Def.'s Mot. at 17; Pl.'s Resp. at 7. What remained was $627,921 that plaintiff was not owed in 1988, but which it paid tax on when it received it that year. *See* Pl.'s Mot. at 18–19. Plaintiff therefore lost the time value of the taxed portion of that $627,921. At oral argument, the government conceded that "there is some problem [with the lost time value of money] that would have given rise to a claim for an adjustment of [plaintiff's] taxes in 1988 ...." Tr. at 43. The government simply did not account for this when it made its offset in 1992. Accordingly, the Service is liable to plaintiff for the lost time value of the taxed portion of that erroneous overpayment.

III. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED as to its entitlement to the time value of money on the taxed portion of the $627,921 it received in 1988 (the time value amount) and DENIED as to plaintiff's remaining claims. Defendant's cross-motion for summary judgment is DENIED as to the time value amount and is otherwise GRANTED. The foregoing resolves all issues except the quantum as to the time value amount. On or before March 7, 2003, the parties shall file with the court a joint status report or, if they cannot agree, separate status reports, proposing further proceedings to determine the time value amount.

IT IS SO ORDERED.