# United States Court of Appeals for the Federal Circuit

03-5173

PACIFIC GAS & ELECTRIC COMPANY
and PG & E CORPORATION,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Craig Martin Buchsbaum, Pacific Gas and Electric Company, of San Francisco, California, argued for plaintiffs-appellants.

Andrea R. Tebbets, Attorney, Tax Division, Appellate Section, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Eileen J. O'Connor, Assistant Attorney General and Richard Farber, Attorney.

Appealed from: United States Court of Federal Claims

Judge Emily C. Hewitt

# United States Court of Appeals for the Federal Circuit

03-5173

PACIFIC GAS AND ELECTRIC COMPANY and PG&E CORPORATION,

Plaintiffs- Appellants,

v.

UNITED STATES,

Defendant-Appellee.

————————————————

DECIDED: August 10, 2005

————————————————

Before MICHEL, <u>Chief Judge</u>,[*] ARCHER, <u>Senior Circuit Judge</u>, and BRYSON, <u>Circuit Judge</u>.

ARCHER, <u>Senior Circuit Judge</u>.

Pacific Gas and Electric Company and PG&E Corporation (collectively "PGE") appeal the United States Court of Federal Claims' judgment that the Internal Revenue Service ("IRS" or "Service") properly offset statutory interest that was erroneously paid to PGE ("erroneous interest") with respect to the tax year 1982, against a later refund of tax and interest determined to be due PGE for the same tax year. <u>Pac. Gas & Elec. Co. v. United States</u>, 55 Fed. Cl. 271 (2003) ("<u>PGE I</u>"). Because the IRS made this offset after the statute of limitations under 26 U.S.C. § 6532(b) would have precluded the government from filing suit to recover the erroneous interest, we reverse.

————————————————

[*] Chief Judge Paul R. Michel assumed the position of Chief Judge on December 25, 2004.

I

This case involves statutory interest erroneously paid to PGE for tax year 1982. PGE timely filed its 1982 tax return. PGE thereafter filed claims for refund for 1982 and the IRS made other adjustments with respect to that year, which are not necessary to detail. Suffice it to say that in August 1988, the IRS determined that PGE had overpaid its 1982 tax. In determining the statutory interest under 26 U.S.C. § 6611 to be paid to PGE on this overpayment, the IRS made errors in its calculation resulting in too much interest being paid to PGE.[1]

PGE thereafter filed additional refund claims for tax and interest for the tax year 1982 primarily to claim certain statutorily authorized carryback adjustments from tax year 1984. In reviewing those refund claims, the IRS discovered the interest computation errors it had previously made in the August 1988 refund and determined that it had erroneously overpaid PGE $3,370,535 in statutory interest. The IRS then used the amount of this erroneous interest previously paid to PGE in 1988 to offset and reduce the tax and interest for the tax year 1982 that it refunded to PGE in 1992.

PGE filed suit in the Court of Federal Claims, contending it was entitled to the additional amount of $5,037,109 in connection with the 1992 refund.[2] PGE argued that the IRS was not permitted to offset such erroneous interest against its allowable refund

---

[1]    The erroneous interest calculation resulted primarily from the treatment of one installment payment on June 20, 1983, of tax for 1982, in the amount of $63,000,000. In the interest computations, the IRS assumed the due date of the return, March 15, 1983, should commence the running of interest, whereas the correct date was when the installment payment was made. The IRS also double-counted the interest due on a small portion of the overpaid tax

[2]    The offset, while made in 1992, was effective back to the date the erroneous interest was paid in August 1988. Thus, PGE claims this larger amount because additional interest under section 6611(b)(2) would have accrued on its refund that was paid in 1992.

of tax and interest in 1992 because it was done after the expiration of the statute of limitations for filing suit to recover an erroneous refund under 26 U.S.C. § 7405. 26 U.S.C. §§ 7405, 6532(b).  The government argued that its use of the offset was permissible.  Both parties moved for summary judgment.

The Court of Federal Claims held that the IRS's offset action in 1992 was proper. PGE I, 55 Fed. Cl. at 277.  Although recognizing that a suit under 26 U.S.C. § 7405 for the amount of the erroneously paid interest would have been time-barred, the court said "there is no provision in the [Internal Revenue] Code forbidding the administrative remedy the Service chose here."  Id. at 276.  The court was not persuaded by PGE's efforts to distinguish precedent the court found controlling.  Specifically, the court explained:

> The most clearly applicable precedents, Lewis, Dysart, and Fisher, all contemplate the allowance of an offset by the government when, as here, the same tax, taxpayer, and tax year are at issue.  Plaintiff has attempted to distinguish the facts of this case from Lewis and Fisher.  . . .  The most important fact for the court is that this case involves the same tax, with the same taxpayer, for the same tax year.  As the Court of Appeals for the Federal Circuit stated in Fisher, "Lewis and Dysart together stand for the proposition that the government may offset against a tax refund claim any additional amounts the taxpayer owes with respect to the tax shown on the return, even though the statute of limitations would bar assessing the additional amount owed."  80 F.3d at 1579.  Here, plaintiff received an amount in overpayment with respect to tax year 1982.  By requesting another refund in 1992 with respect to tax year 1982, plaintiff opened the door to the Service's offsetting the 1988 overpayment amount. Therefore, the Service's action in 1992 was legal.

Id. at 277.  The court further determined that the offset was implemented correctly.

PGE now appeals the issues of whether the offset was permissible and, if it was, whether the IRS implemented it properly.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

II

"We review the Court of Federal Claims' grant of summary judgment without deference." Agwiak v. United States, 347 F.3d 1375, 1377 (Fed. Cir. 2003).

III

We must determine whether the IRS was entitled to offset the erroneous interest paid to PGE in 1988 against amounts due and owing PGE on a subsequent refund relating to the same tax year when the government could not have maintained a suit for such erroneous interest due to the expiration of the statute of limitations. See 26 U.S.C. §§ 7405, 6532(b). Surprisingly, this issue appears be one of first impression.[3]

PGE argues that when a taxpayer receives an erroneous refund of statutory interest it is not a tax liability but an ordinary debt obligation to the government. Thus, such erroneous interest mistakenly paid cannot be assessed or collected by the IRS in the same manner as a tax liability. PGE contends that it must be recovered, if at all,

---

[3] Both parties agree that the general statutory offset provision, 26 U.S.C. § 6402(a), does not apply to this case. Section 6402(a) provides "[i]n the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person." 26 U.S.C. § 6402(a).

Internal documents from the IRS indicate that it has long been the Service's position that unless it can assess the amount to be offset, it may not use its statutory right of offset under 26 U.S.C. § 6402. In Chief Counsel Advice 20014033, the Chief Counsel of the IRS stated "unless the Service can assess the amount erroneously refunded (as in the case of a rebate refund), the Service may not use its statutory right of offset under I.R.C. § 6402 to recover the erroneous refund." IRS CCA 200014033 *9 (2000); see also IRS GCM 36263 (1975) (stating "[t]he erroneous payment of $900 cannot be recovered by assessment and offset under Code § 6402 or other tax collection procedures, since there is no tax liability"). This may explain why both parties agree that 26 U.S.C. § 6402(a) is inapplicable to the present case, that is, because the erroneous interest at issue here is not assessable.

only by suit for an erroneous refund under 26 U.S.C § 7405 or by means otherwise afforded to the government for collection of debts (e.g., through a common-law right of offset, provided that the right is exercised within the period of limitations applicable to suits brought under 26 U.S.C. § 7405). PGE also asserts that there is no statutory or regulatory basis for extending the Supreme Court's decision in Lewis v. Reynolds, 284 U.S. 281 (1932), and its progeny to non-tax liabilities.

The government responds simply that under Lewis v. Reynolds and its progeny the taxpayer's 1992 claim for refund of its 1982 overpayment reopened its entire 1982 liability to redetermination by the IRS. As such, it argues that the remedy of offset was available to the IRS.

A

Lewis v. Reynolds was an income tax refund suit in which, in response to the refund claimed, the Commissioner of Internal Revenue determined that a deduction taken on the return, which was previously allowed, had been improperly taken. In determining the amount of the refund, the improper deduction was disallowed by the Commissioner. The limitations period for assessing an additional tax to reflect the disallowance of the deduction had passed when the Commissioner acted. The Supreme Court agreed with the Court of Appeals' conclusion that the relevant statutory provisions "clearly limit refunds to overpayments. It follows that the ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax [and t]his involves a redetermination of the entire tax liability." Id. at 283 (quoting Lewis v. Reynolds, 48 F.2d 515, 516 (10th Cir. 1931) (emphasis added)). Affirming the

Commissioner's action, the Court stated:

> While the statutes authorizing refunds do not specifically empower the Commissioner to reaudit a return whenever repayment is claimed, authority therefor is necessarily implied. An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States <u>to retain payments</u> already received when they do not exceed the amount <u>which might have been properly assessed and demanded</u>.

284 U.S. at 283 (emphases added). Thus, the Court simply applied the statutory provisions dealing with refunds[4] which require that an overpayment must be shown by the taxpayer before a refund can be authorized. Accordingly, where the taxpayer has filed a claim for a tax refund, the IRS may offset against the refund claim a tax deficiency for the same tax year that previously had not been assessed, even though

---

[4]   The refund statutes at issue in <u>Lewis v. Reynolds</u> read as follows:

(a) Where there has been <u>an overpayment of any income, war-profits, or excess-profits tax imposed by this Act</u> (Feb. 26, 1926), the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909, the Act entitled "An Act to reduce tariff duties and to provide revenue for the Government, and for other purposes," approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any such Act as amended, the amount of such overpayment shall, except as provided in subdivision (d), be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer.

26 U.S.C. § 284(a) (1926) (emphasis added).

(a) Authorization. Where there has been an <u>overpayment of any tax</u> imposed by this title, the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer.

26 U.S.C. § 322(a) (1928) (emphasis added).

03-5173                          6

the assessment of such tax is barred by the expiration of the applicable period of limitations. Otherwise, a refund might be made when there was not, in fact, an "overpayment," an event that would be inconsistent with the statute. See supra at n.4, 3.

This defense of "lack of overpayment," permitting the government to offset a refund claim with a tax deficiency for the same tax year owed by the same taxpayer, was further explored by our predecessor court in Dysart v. United States, 340 F.2d 624 (Ct. Cl. 1965). In this case, the taxpayer sought a refund of an erroneously assessed and collected penalty for the tax year 1954. The government conceded that the penalty was collected in error but claimed an offset in view of a tax deficiency that exceeded the penalty, despite the fact that the statute of limitations barred the assessment of the tax deficiency.[5] The court ruled that "the tax penalty is an addition to the tax, 26 U.S.C. § 294 (1952), and as such is considered as part of the income tax for the taxable year. See Rev.Rul 56—492; 1956—2 Cum.Bul. 949." Id. at 626 n.1.

Another issue before the court was "whether in a suit for refund where both the taxpayers' claim and the government's setoff concern the same tax for the same year by the same taxpayers, the right of the government to assert such a defense is an unconditional right . . . or whether . . . such a right is subject to the court's discretion after evaluating the 'equities' involved in each particular case." Id. at 606.[6] The court

---

[5] The asserted tax deficiency was used only to reduce the taxpayer's refund to zero.

[6] In reaching the answer to this question, the court discussed the differences between setoff and the doctrine of equitable recoupment (a doctrine which requires a single transaction be at issue and involves attempts to offset tax liability from one year against that for another year or where attempts are made to set off the tax liability of one taxpayer against that of a second taxpayer).

held that the Supreme Court's language in <u>Lewis v. Reynolds</u> laid down an "unqualified rule that 'an overpayment must appear before refund is authorized,'" 340 F.2d at 629 (quoting <u>Lewis v. Reynolds</u>, 284 U.S. at 283), and that there was nothing to suggest "limiting the defense of lack of overpayment where the refund claim and the setoff relate to the same tax, for the same year, payable by the same taxpayer," <u>id.</u> at 629. The court further commented that when determining whether there was an overpayment, a taxpayer's "entire <u>tax liability</u> under the particular tax return was open for redetermination." <u>Id.</u> at 628 (emphasis added).

The <u>Dysart</u> case, therefore, reiterated the necessity of an overpayment before a refund can be authorized and held that a court may not look to the equities of a case to deny the defense of lack of overpayment to the government. Contrary to the government's assertion, <u>Dysart</u> did not open the door wider than <u>Lewis v. Reynolds</u> already had for the IRS to offset a refund. At most, it simply clarified that setoff applied to the refund claim for a tax penalty improperly collected, because a tax penalty is an addition to tax and should be considered part of the tax liability.

Our holding in <u>Fisher v. United States</u>, 80 F.3d 1576 (Fed. Cir. 1996), involved a refund claim against which the government offset deficiency interest owed by the same taxpayer for the same tax year. Our analysis characterized the teachings of <u>Lewis v. Reynolds</u> and <u>Dysart</u> as permitting the government to offset against a tax refund claim any tax owed for that year: "<u>Lewis</u> and <u>Dysart</u> together stand for the proposition that the government may offset against a tax refund claim any additional amounts the taxpayer owes with respect to the <u>tax shown on the return</u>, even though the statute of limitations would bar assessing the additional amount owed." <u>Id.</u> at 1579 (emphasis added). We

also emphasized the necessity of the existence of an overpayment before a refund could be authorized.  Id. at 1579 (noting that in Dysart our predecessor court stated "the essential principle that a taxpayer suing for a refund of tax for a particular year must show that, in actuality, he overpaid that tax").

The crux of our decision in Fisher, however, involved the question of whether deficiency interest should be treated any differently than the tax deficiency in Lewis v. Reynolds or the tax penalty in Dysart.  Looking to the Revenue Code and our predecessor court, we held that "for the purposes of offset, interest should [not] be treated any differently than other components of tax liability."  Fischer, 80 F.3d at 1580; see 26 U.S.C. § 6601(e) (1994) (stating that interest on tax underpayments "shall be assessed, collected, and paid in the same manner as taxes" and that any reference "to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax"); Alexander Proudfoot Co. v. United States, 454 F.2d 1379, 1382 (Ct. Cl. 1972) (stating "[t]he Code's design for such interest is to assimilate it to the tax itself . . . . For a long time, deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax").

The common thread in these cases is that the refund statute requires that there be an actual overpayment of tax to support a refund.  There cannot be such an overpayment without taking into account any additional amount of assessable tax, interest, or penalty owed by the taxpayer even though such an amount could not be assessed and collected because of the running of the statute of limitations.

B

In the instant case, the amount used to offset the refund claim in 1992 was the erroneously calculated statutory interest, a nonassessable amount. The assessable quantities in <u>Lewis v. Reynolds</u> and its progeny (tax deficiency, deficiency interest, and tax penalty) are a part of a taxpayer's tax liability, whereas nonassessable statutory interest is not. Thus, contrary to the government's assertion, <u>Lewis v. Reynolds</u> and its progeny are not directly on point with the case before us. We must, however, decide whether to extend this line of cases to cover the situation at issue here. Because the courts have distinguished components of tax liability which are assessable amounts from statutory interest which is not a tax liability component or assessable, we have found no convincing reason the two quantities should be treated the same. We, therefore, decline to extend <u>Lewis v. Reynolds</u> and its progeny to reach the facts of this case.

The tax deficiencies (including assessable interest and penalties) asserted as an offset in <u>Lewis v. Reynolds</u> and its progeny are very different from the offset at issue here and even treated differently by the Internal Revenue Code. Our case law notes the distinctions. In <u>Proudfoot</u>, 454 F.2d 1379, for example, our predecessor court explained that statutory interest arises simply because the government had possession

of the taxpayer's funds, whereas deficiency interest is additional money due the government that arises from the taxpayer's tax liability:

> [T]he Revenue Code deals quite differently with statutory interest payable by the Government on overpayments. Regulated by §§ 6611-6612, that form of interest is paid by the United States, not as a refund of interest previously paid by the taxpayer on demand of the Service, but simply because the Government has had use of money found to belong to the taxpayer. . . .

Id. at 1384; see also Fisher, 80 F.3d at 1580 ("The Internal Revenue Code treats [deficiency] interest as an integral part of the liability itself. Thus, 26 U.S.C. § 6601(e) (1994), provides that interest on tax underpayments 'shall be assessed, collected, and paid in the same manner as taxes' and that any reference 'to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.'").

We are not the only court to treat tax monies differently based on the nature or generation of the funds. See O'Bryant v. United States, 49 F.3d 340, 346 (7th Cir. 1995); Crocker First Nat'l Bank of S. F. v. United States, 137 F. Supp. 573, 574 (N.D. Cal. 1955) (explaining that a suit to recover an erroneous refund is not a suit "in respect of any liability in respect of any tax," because any tax liability was satisfied when the tax was originally paid). In O'Bryant, the taxpayers paid their tax and interest liability in advance, which amounts were then assessed. The Service later erroneously sent the taxpayers a refund check. Without reassessing the tax, the Service then instituted collection activities and recovered a portion of the erroneous refund. The taxpayers sued to quiet title and recover the monies they claimed were unlawfully taken by the government. The Seventh Circuit noted that the refund taxpayers received was a nonrebate refund. "Nonrebate refunds are sent to the taxpayer not because the IRS determines that the tax paid is not owing but because of mistakes, typically clerical or

computer errors." O'Bryant, 49 F.3d at 342. The court stated that there is a fundamental difference between taxpayers' liability for tax and their obligation, if any, to return a refund paid by mistake:

> [The government's proposed] approach would overlook the fundamental difference in character between the money that the O'Bryants now possess (a refund caused by the IRS' error) and the money they originally owed the IRS (their tax liability). The money the O'Bryants have now is not the money that the IRS' original assessment contemplated, since that amount was already paid. Rather, it is a payment the IRS accidentally sent them. They owe it to the government because they have been unjustly enriched by it, not because they have not paid their taxes.

Id. at 346. The court held that because the money the taxpayer received was not a part of the taxpaying transaction, the Service could not recover the funds through post-assessment procedures. Id.

A tax deficiency, tax penalty, and deficiency interest, the quantities permitted to offset the taxpayer's claimed refunds in Lewis v. Reynolds and its progeny, are all components of a taxpayer's tax liability. See Dysart, 340 F.2d at 626 n.1 ("[T]he tax penalty . . . is considered as part of the income tax for the taxable year."); Proudfoot, 454 F.2d at 1382 ("[T]he Code's design for such [deficiency] interest is to assimilate it to the tax itself. . . . For a long time, deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax."). Therefore, these components are taken into account in determining whether an overpayment exists and permitting them to offset a claimed tax refund is logical. There is no suggestion, however, that statutory interest is a part of, or even related to, a taxpayer's tax liability. Indeed it cannot be, for in the case of statutory interest mistakenly paid, the taxpayer has no underlying statutory obligation under the tax code to pay the government. As stated in O'Bryant, mistaken nonrebate refunds are owed to the government by reason

of unjust enrichment.  O'Bryant, 49 F.3d at 346.  Statutory interest is also distinguishable from the components of tax liability because of its nonassessable nature.  Given that a nonassessable quantity cannot be determined to be due and collectable, see West's Tax Law Dictionary 67 (2004 ed.) (defining "assess" as "[t]he posting of tax, penalty, and interest that has been determined to be due and collectable"), it would be illogical to treat such a quantity as analogous to a taxpayer's tax liability.

The tax code provides an integrated and comprehensive statutory scheme for assessing, collecting, and refunding taxes, deficiency interest, and penalties.  Lewis v. Reynolds and its progeny did not disturb this framework; they merely applied the refund provision requiring an overpayment.  Were we to hold that the IRS is correct in determining that an offset is permissible here, we would be going outside of this well-tailored statutory scheme.  We, therefore, decline to extend Lewis v. Reynolds to apply to statutory interest improperly paid to PGE.

C

The only case we have found that deals with erroneously refunded statutory interest is factually distinguishable from the instant case.  In Crocker, 137 F. Supp. 573,[7] the government offset erroneously paid interest for tax year 1942 against a refund for tax year 1945.  The court stated that "since it [is] obvious that the offset claimed by the Commissioner must be the equivalent of a cause of action by the Government in a suit to recover the erroneous payment, the parties [do] not dispute that the time limitation for suit applie[d] equally to the offset."  Id. at 574.  The offset in Crocker was

---

[7]     Of course, as a district court decision, this case is non-binding on us.

not made within two years after the payment of the erroneous interest on the 1942 refund. Another question before the court was whether a wartime statute suspending certain time limitations relating to internal revenue operated to extend the time in which suit might have been brought to recover the interest paid on the 1942 refund and consequently the time in which the offset could be made. The court determined that the offset had not been timely made and entered judgment for the taxpayer.

As can be seen, Crocker dealt with applying the offset to a refund claim for a different tax year, whereas in this the case the offset was applied to a claimed refund in the same tax year. Moreover, the court noted that the government conceded that the statute of limitations pertaining to when the United States may sue to recover erroneous refunds of taxes or erroneous payments of interest on refunds applied, whereas in this case the government makes no such concession. While readily distinguishable on the facts, Crocker does equate the ability to offset erroneously or mistakenly paid statutory interest with a cause of action by the government to sue for an erroneous refund under § 7405.

Like the court's determination in Crocker, we view the offset claimed by the Service here as akin to a cause of action by the government in a suit to recover the erroneous interest. As noted in Crocker, while there is no statute governing the time limit for when such an offset may be made, there is a statute expressly limiting when the government can sue to recover erroneous refunds under 26 U.S.C. § 7405. Id. at 574 ("There is no limitation statute specifically fixing the time within which such an offset may be made. There is, however, a statute, limiting to two years, the time within which the United States may sue to recover erroneous refunds of taxes or erroneous

payments of interest on refunds."). We see no reason why this statute of limitations should not apply equally to the offset in this case. Thus, we hold that the Service's ability to offset erroneously paid statutory interest against a taxpayer's refund claim in the same tax year is subject to the same statute of limitations that applies to suits by the United States to recover erroneous refunds of taxes or erroneous payments of interest on refunds. See 26 U.S.C. §§ 6532(b), 7405.

Recent decisions internal to the IRS are not at odds with our determination today. Indeed, the Chief Counsel of the IRS expressly approved of the Crocker decision and further explained "we are of the opinion that as long as the Service is unable to assess nonrebate refunds, the Service may justifiably rely on the common law right of offset to recover these non-tax debts. The applicable statute of limitations for this remedy is the two or five[8] year period set forth in I.R.C. § 6532(b)." IRS CCA 200014033.[9] While not

---

[8] "[I]f the refund is induced by fraud or misrepresentation of material fact." 26 U.S.C. § 6532(b).

[9] This reasoning dovetails with earlier IRS decisions. In a 1975 General Counsel Memorandum it is stated:

> Suppose for instance, the taxpayer files a return showing no tax liability and claims a refund of tax withheld of $100. The Service erroneously issues a check in the amount of $1000. The erroneous payment of $900 cannot be recovered by assessment and offset under Code § 6402 or other tax collection procedures, since there is no tax liability. A civil suit to recover the refund under Code § 7405 is therefore the Service's sole remedy, except we believe it is proper in this instance for the Service to exercise a common law right of offset by deducting the amount claimed under Code § 7405 from any refund due the taxpayer. Since the amount so claimed is not a tax liability and could never have been collected under the tax recovery provisions of the Code, the procedural safeguards given to the taxpayer by those provisions will not be frustrated by use of common law offset in this situation. We therefore conclude that such offset may be here exercised within the time limitations prescribed by Code § 6532(b).

bound by the Service's position, we simply note that our analysis has led us to the position espoused by the Service for at least the last thirty years.

Indeed, <u>Lewis v. Reynolds</u> is now over seventy years old. Congress and the IRS have had ample time to provide specific authority that would have broadly allowed the offset the government is seeking in this case. Indeed, if it were intended to allow the government to recover mistaken payments of statutory interest (and other non-tax debts) by way of offset, and not merely tax liabilities used to determine whether there was an overpayment of tax, the tax code or the regulations could have so stated.

In the present case the offset occurred after the two-year statute of limitations had expired. As such, the Service's right to offset was time-barred.[10] Because we hold that the offset applied here was not available to the IRS, the issue of whether the IRS correctly implemented the offset is moot.

---

IRS GCM 36263 *10 (1975).

We do not accord these internal documents <u>Skidmore</u> or any other type of deference. <u>See</u> <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944); <u>see</u> <u>also</u> IRS GCM 36263 *13 (stating "This document is not to be relied upon or otherwise cited as precedent by taxpayers."). We merely note that the Service has taken the position that offsets of nonassessable quantities against tax refunds must be made within the statute of limitations set forth in 26 U.S.C. § 6532(b).

[10] The government argues that the doctrine of equitable recoupment supports the judgment below. The applicability of the doctrine of equitable recoupment does not appear to have been raised below, and, in any event, it was not decided by the Court of Federal Claims. This doctrine is only available in very limited circumstances. In this connection:

> Congress has chosen to incorporate the doctrine of "equitable recoupment" into our revenue laws by what is now commonly known as the mitigation provisions of 1311-1315 of the Internal Revenue Code of 1954. In so doing, Congress has enumerated a series of requirements which have to be met before these sections become operative and recoupment allowed. It is significant that none of these requirements are based on equitable considerations.

<u>Dysart</u>, 340 F.2d at 628.

03-5173                                    16

Our decision today results in a windfall for the taxpayer.  As the Seventh Circuit has noted in a similar situation, "although it may seem unjust that the IRS cannot recover its erroneous refund in this case, . . . we cannot base our resolution of the issue before us on the equities of a particular factual situation. . . . [T]here are many situations in which permitting the IRS to recover would be just as unfair as barring recovery here." O'Bryant, 49 F.3d at 346-47.

We hold that the offset applied to PGE's 1992 refund claim was time-barred. Accordingly, we reverse the trial court's judgment with respect to the offset and remand for further proceedings as necessary.

No Costs.

<u>REVERSED AND REMANDED</u>