*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0061p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DANIEL C. GREER and WINNIE L. GREER,
            *Petitioners-Appellants,*

            *v.*

COMMISSIONER OF INTERNAL REVENUE,
            *Respondent-Appellee.*

No. 08-1014

On Appeal from the United States Tax Court.
No. 21795-03.

Argued:  December 2, 2008

Decided and Filed:  February 19, 2009

Before:  BOGGS, Chief Judge; CLAY, Circuit Judge; and BERTELSMAN, District Judge.[*]

─────────────────

## COUNSEL

**ARGUED:**  Kenton L. Ball, SLONE & BENTON PSC, Lexington, Kentucky, for Appellants. Kenneth W. Rosenberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Kenton L. Ball, SLONE & BENTON PSC, Lexington, Kentucky, Joy L. Hall, HORWITZ LAW FIRM, Crescent Springs, Kentucky, for Appellants.  Kenneth W. Rosenberg, Bridget Maria Rowan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

─────────────────

## OPINION

─────────────────

BOGGS, Chief Judge.  Daniel and Winnie Greer claimed a number of tax benefits from a 1982 investment.  The IRS subsequently disallowed the benefits and, in 2003, imposed penalties on the Greers for negligently underpaying their taxes.  The

─────────────

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Greers challenged, *inter alia*, the amount of those penalties in the Tax Court, arguing that they had made a remittance in 1995 that paid their tax liability and thus reduced their penalties. The Tax Court rejected this argument, and the Greers appeal. We affirm because the 1995 court-ordered refund of the Greers' payment, with interest, negated the effect of that payment on their penalty obligation.

I

In 1982, the Greers invested $50,000 in a partnership called Madison Recycling Associates. Based on this investment, the Greers claimed a number of tax benefits for tax years 1979–1982 and received refunds for 1979–1981.

In 1984, the IRS began auditing the Madison partnership. In 1987, it issued a notice of Final Partnership Administrative Adjustment (FPAA) disallowing the tax benefits the Greers had claimed. In 1988, Madison partners (including the Greers) other than the tax matters partner filed a petition for readjustment in the Tax Court pursuant to IRC § 6226. Their only argument was that the IRS did not issue the FPAA within the statutory period. *Madison Recycling Assocs. v. C.I.R.*, T.C. Memo 1992-605, at *1. On October 13, 1992, the Tax Court denied summary judgment for the partners, holding that a waiver of the statute of limitations by the tax matters partner was valid. *Id.* at *6.

On December 21, 1992, with the Tax Court litigation still awaiting resolution on the merits, the Greers mailed amended returns for 1979–1981 calculating the additional tax they owed if the Madison benefits were disallowed; with interest, the total liability was $189,769. The Greers included a check for the full amount (the "1992 remittance"), with a cover letter stating that the remittance was intended as a payment of the Greers' tax liability and allocating the remittance so as to satisfy each year's proposed tax and interest liability. They also sent a claim for a refund and a second set of returns, which were labeled "protective claim" and stated their tax liability if the Madison benefits were allowed.

Approximately eight months later, on August 19, 1993, the Greers filed suit in the United States District Court for the Eastern District of Kentucky seeking a refund of

their "wrongfully collected . . . payment," with interest. The IRS moved to dismiss for lack of jurisdiction, and the district court granted the motion on September 21, 1994, in a brief order. Although the district court refused to "concede . . . the absence of subject matter jurisdiction under 28 U.S.C. § 1346" (which grants jurisdiction over wrongful payment claims), it nonetheless felt that it was "appropriate to dismiss the action without prejudice, subject to the plaintiff's right to refile pending the outcome of related tax court litigation, now awaiting resolution in excess of six years."

However, despite the dismissal of the suit, the court then ordered the IRS to "repay the [Greers] the amount of tax deficiency paid by the [Greers] as a prerequisite to the filing of this action, plus interest." Neither party appealed, and the IRS refunded the $189,769, plus interest, in June 1995 (the "1995 refund").

On April 9, 2001, the Tax Court finally ruled on the merits of the Madison partners' readjustment petition, rejecting the statute of limitations claim and upholding the FPAA. *Madison Recycling Assocs. v. C.I.R.*, T.C. Memo 2001-85. The Second Circuit affirmed that decision on July 9, 2002. *Madison Recycling Assocs. v. C.I.R.*, 295 F.3d 280 (2d Cir. 2002).

Once the FPAA was final, the IRS could assess deficiencies, *see* IRC § 6225, and on September 29, 2003, the IRS mailed notices of deficiency to the Greers for all four tax years affected by their Madison investment. The IRS also imposed several penalties on the Greers, including a continuing interest penalty under IRC § 6653(a)(2) (1982).[1] Section 6653(a)(2) states:

> There shall be added to the tax . . . an amount equal to 50 percent of the interest payable . . .
>
> > (A) with regard to the portion of [an] underpayment [of tax] which is attributable to . . . negligence . . ., and

---

[1] The IRS applies the penalty provisions that were in effect at the time of the underpayments. *See, e.g.*, *Thomas v. United States*, 166 F.3d 825, 826 n.1 (6th Cir. 1999). Section 6653 was repealed in 1989 and replaced with IRC § 6662, which imposes a general accuracy penalty on understatements. Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, 103 Stat. 2106.

> (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on [1] the date of the assessment of the tax (or [2], if earlier, the date of the payment of the tax).

The IRS asserted that the Greers were negligent in claiming the Madison tax benefits and that their entire 1981 and 1982[2] underpayments were attributable to that negligence. The IRS determined that the penalty period ended on the date of the assessment because the Greers' 1981 and 1982 taxes had not been paid.

The Greers filed a petition with the Tax Court challenging, *inter alia*, the amount of the § 6653(a)(2) penalties. They argued that the 1992 remittance was a "payment of the tax," and, as such, ended the penalty period. The Tax Court rejected this argument for two reasons. First, it held that the 1992 remittance was a deposit, not a payment, and thus had no effect on the § 6653(a)(2) penalties. Second, the Tax Court concluded that even if the remittance was a payment, the Greers were not entitled to relief because the 1995 refund revived the tax liability underlying the § 6653(a)(2) penalties. The Greers appeal.

## II

We review Tax Court decisions "in the same manner and to the same extent as decisions of the district courts." IRC § 7482(a)(1). Thus, we review the Tax Court's factual findings for clear error and its legal conclusions de novo. *Smith v. C.I.R.*, 926 F.2d 1470, 1474 (6th Cir. 1991).

## III

The only question on appeal is whether the § 6653(a)(2) penalty period ended on the date of the 1992 remittance or on the date of the assessment. After a thorough consideration of the record, we conclude that the 1992 remittance was a payment, not a deposit, and thus extinguished the Greers' tax liability. *See Ameel v. United States*,

---

[2] The notices of deficiency also asserted § 6653(a)(2) penalties for 1979 and 1980. However, the IRS has conceded these penalties because § 6653(a)(2) was added by the Economic Recovery Act of 1981, Pub. L. No. 97-34, 95 Stat. 172, and therefore was not in effect for tax years 1979 or 1980.

426 F.2d 1270, 1271–73 (6th Cir. 1970) (adopting a facts-and-circumstances test for determining whether a remittance is a deposit or a payment).  As a result, the § 6653(a)(2) penalty period normally would have ended on the date of the 1992 payment.[3]  IRC § 6653(a)(2)(B).  However, we hold that the penalty period actually ended on the date of the assessment because the 1995 refund negated the 1992 remittance's "payment of the tax," thereby reviving the Greers' tax liability and continuing the penalty period.

We have previously held that a refund can revive an extinguished tax liability. In *Beer v. C.I.R.*, we ruled that erroneous rebate refunds—refunds issued because the IRS mistakenly calculates that the taxpayer overpaid his or her tax liability—can be recovered through a supplemental assessment of deficiency.  733 F.2d 435, 436–37 (6th Cir. 1984) (per curiam); *see also Singleton v. United States*, 128 F.3d 833, 838–39 (4th Cir. 1997); *Brookhurst, Inc. v. United States*, 931 F.2d 554, 557 (9th Cir. 1991); *Stanley v. United States*, 140 F.3d 1023, 1027 (Fed. Cir. 1998) (dicta); *Bilzerian v. United States*, 86 F.3d 1067, 1069 (11th Cir. 1996) (per curiam) (dicta); *Clark v. United States*, 63 F.3d 83, 87 (1st Cir. 1995) (dicta); *O'Bryant v. United States*, 49 F.3d 340, 345–47 & n.8 (7th Cir. 1995) (dicta).  Because only tax liabilities may be assessed as a deficiency, *Pacific Gas and Elec. Co. v. United States*, 417 F.3d 1375, 1379, 1381–83 (Fed. Cir. 2005); *United States v. Frontone*, 383 F.3d 656, 659–61 (7th Cir. 2004), *Beer* necessarily held that an erroneous rebate refund revives tax liability.  *See also Brookhurst*, 931 F.2d at 557–58 (recognizing that an erroneous rebate refund makes a previously paid tax liability "unpaid"); *Frontone*, 383 F.3d at 657, 659–61 (holding that an erroneous rebate refund revives tax liability because the "ultimate source of the IRS's claim [to the amount erroneously refunded] is a tax owed"); *cf.* IRC § 6211 (counting (presumably erroneous) rebate refunds as tax amounts that increase a taxpayer's assessable

---

[3] The potential effect of the 1992 payment is more complicated than this suggests.  In 1992, the Greers correctly calculated their 1981 underpayment, and therefore the 1992 payment paid their 1981 tax liability in full.  As a result, the penalty period for the 1981 underpayment would have ended.  However, the Greers did not correctly calculate their 1982 underpayment, and therefore the 1992 payment did not pay their 1982 tax liability in full (they underpaid by $18,976).  As a result, the 1992 payment, despite satisfying part of the Greers' 1982 tax liability, was not a "payment of the [full] tax," and therefore did not end the penalty period for the 1982 underpayment.  Because this complication is irrelevant to our resolution of the Greers' appeal, we ignore it.

deficiency). *But see Bilzerian*, 86 F.3d at 1069 (stating, in dicta, that "once a tax liability is paid, no erroneous refund—whether rebate or non-rebate—can revive it").

This principle has already been applied in this case. The Greers originally paid their 1979–1981 tax liabilities in full; their underpayment for those years was the result of rebate refunds made after they submitted amended returns in 1982 claiming carryback tax benefits from their Madison investment. Those rebate refunds were erroneous because the IRS later disallowed the tax benefits on which they were premised. *Cf. Beer*, 733 F.2d at 436 (holding that refunds issued based on a claimed exemption that was later disallowed are erroneous). By assessing the amount of the 1982 rebate refunds as a deficiency, the IRS treated the erroneous rebate refunds as reviving the Greers' 1979–1981 tax liability.

Erroneous rebate refunds revive tax liability because they are tax amounts; the refund returns (part of) the taxpayer's payment, thus negating the payment and reviving tax liability. *See Frontone*, 383 F.3d at 659–61; *cf.* IRC § 6211. Although the 1995 refund was not an erroneous rebate refund (it was not the result of a substantive determination that the Greers had overpaid their taxes), we conclude that it was a tax amount because it was the deliberate return of the Greers' 1992 payment of taxes. The link between the 1995 refund and the 1992 payment is strong: the Greers submitted an administrative request for a refund with their 1992 payment, their district court complaint specifically requested the payment's return, and the district court specifically ordered the IRS to "repay . . . the amount of tax deficiency paid by [the Greers]." Furthermore, the 1995 refund completely negated the 1992 payment as an economic matter because the refund included interest, leaving the IRS and the Greers in the same economic position as if the 1992 payment never been made.

Because the refund was a tax amount, the Greers' tax liability was revived; it became "unpaid," *Brookhurst*, 931 F.2d at 557–58. Thus, when the IRS imposed the § 6653(a)(2) penalty, the Greers' taxes were not paid, and the IRS correctly determined that the penalty period ended on the date of the assessment.

The Greers argue that the 1995 refund did not negate the 1992 "payment of [their] tax." They rely on case law holding that an "erroneous *nonrebate* refund"—a refund made for any reason other than a substantive calculation that the taxpayer overpaid his or her tax liability, e.g., a clerical error—does not revive tax liability, but rather creates a nontax unjust enrichment liability.[4] *See Bilzerian*, 86 F.3d at 1069; *Clark*, 63 F.3d at 87–88; *O'Bryant*, 49 F.3d at 346–47; *United States v. Wilkes*, 946 F.2d 1143, 1152 (5th Cir. 1991); *see also Pacific Gas and Elec. Co.*, 417 F.3d at 1382–83 (approvingly discussing this case law in dicta); *Mildred Cotler Trust v. United States*, 184 F.3d 168, 171–72 (2d Cir. 1999) (same); *Singleton*, 128 F.3d at 837 (same).

At first glance, the 1995 refund appears to be an erroneous nonrebate refund: it is not a rebate refund, and the district court should not have ordered it without making a substantive determination that the Greers overpaid their taxes. However, we conclude that the "erroneous nonrebate refund" case law does not control this case for two reasons: first, the 1995 refund was not "erroneous"; and second, the rationale for treating erroneous nonrebate refunds as nontax liabilities does not apply to the 1995 refund.

First, we do not believe that the 1995 refund was "erroneous." Court-ordered refunds, even if unmerited, are not "erroneous" for the purposes of tax law. Deeming such refunds to be "erroneous" would allow the IRS to circumvent the court's order: after making the refund, the IRS could immediately recover it by suing the taxpayer under IRC § 7405, which creates a cause of action for the recovery of erroneous refunds. *See United States v. Russell Mfg. Co.*, 349 F.2d 13, 16–18 (2d Cir. 1965) (Friendly, J.) (holding that a refund is not erroneous, and therefore not recoverable by a § 7405 suit, when it was "deliberately made" by the IRS to satisfy a court order, regardless of the merits of that order). This is consistent with the case law, which gives only IRS mistakes as examples of erroneous nonrebate refunds. *See, e.g.*, *O'Bryant*, 49 F.3d at 342 (IRS clerical and computer errors).

---

[4] There is a tension between the Greers' argument and their failure to challenge the IRS's assessment of the amount of the 1995 refund as a tax liability. A similar tension is evident in some of the erroneous nonrebate refund cases. *See, e.g.*, *Bilzerian*, 86 F.3d at 1069 (stating that although "no erroneous refund—whether rebate or non-rebate—can revive [a paid tax liability]," nonrebate refunds may be recovered through a supplemental assessment); *cf. Frontone*, 383 F.3d at 662 (recognizing this tension).

Second, we do not believe that the rationale behind the erroneous nonrebate refund case law applies here. The cases hold that such refunds do not revive tax liabilities because they are not tax amounts. The *O'Bryant* court explained:

> [There is a] fundamental difference in character between the money that the O'Bryants now possess (a refund caused by the IRS'[s] error) and the money they originally owed the IRS (their tax liability). The money the O'Bryants have now is not the money that the IRS'[s] original assessment contemplated, since that amount was already paid. Rather, it is a payment the IRS accidentally sent them. They owe it to the government because they have been unjustly enriched by it, not because they have not paid their taxes. Because it is a refund, the money the O'Bryants received is not part of the taxpaying transaction as the IRS asserts . . . . [E]rroneous [nonrebate] refunds and tax liabilities are simply not of the same ilk.

49 F.3d at 346–47; *see also, e.g.*, *Wilkes*, 946 F.2d at 1151–52 (explaining that an "unsolicited, erroneous [nonrebate] refund" is not a tax amount and therefore cannot revive a previously satisfied tax liability).

As we explained above, the 1995 refund *was* a tax amount, and therefore it resulted in a tax liability, not an unjust enrichment liability. The district court specifically ordered the IRS to refund the "tax deficiency paid by the [Greers]." Furthermore, the 1995 refund was neither accidental nor unsolicited; it was deliberately made in response to the Greers' requests and a court order to return the 1992 payment. Given the direct and intentional link between the 1995 refund and the 1992 payment, we conclude that the refund was "part of the [Greers'] taxpaying transaction."

IV

This is a unique case because the 1995 refund does not fit neatly into the established categories of "erroneous rebate refund" or "erroneous nonrebate refund." On these facts, we conclude that the 1995 refund was a tax amount that revived the Greers' tax liability. Because the tax liability underlying the § 6653(a)(2) penalties was unpaid when the IRS assessed the Greers' underpayment, only the assessment ended the penalty period. The judgment of the Tax Court is therefore AFFIRMED.