**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-2034**

───────────────

CATHERINE L. LAROSA,

        Petitioner – Appellant,

     v.

COMMISSIONER OF INTERNAL REVENUE,

        Respondent – Appellee.

───────────────

Appeal from the United States Tax Court. (Tax Ct. No. 10164-20)

───────────────

Argued: March 17, 2026                         Decided:  May 18, 2026

───────────────

Before RUSHING, HEYTENS, and BERNER, Circuit Judges.

───────────────

Vacated and remanded by published opinion. Judge Heytens wrote the opinion, which Judge Rushing and Judge Berner joined.

───────────────

**ARGUED:** Andrew Michael Weiner, KOSTELANETZ LLP, Washington, D.C., for Appellant. Robert Joel Branman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Caroline D. Ciraolo, Michael Waalkes, KOSTELANETZ LLP, Washington, D.C., for Appellant. Jennifer M. Rubin, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

───────────────

TOBY HEYTENS, Circuit Judge:

A provision of the tax code gives the Internal Revenue Service discretion to "relieve" a taxpayer of "liability" for "any unpaid tax or any deficiency." 26 U.S.C. § 6015(f)(1). Sometimes, the IRS refunds money to a taxpayer but later concludes it erred in doing so. Our sole question in this appeal: When the IRS mistakenly refunds *interest payments* a taxpayer made on previously underpaid taxes, does the taxpayer have a "liability" for "unpaid tax" that is eligible for discretionary relief under Section 6015(f)(1)? Because we conclude the answer is yes, we vacate the tax court's judgment and remand for further proceedings.

I.

Petitioner Catherine LaRosa filed joint tax returns with her now-deceased husband for decades. During that time, "[t]he LaRosas ha[d] a long history of interactions with the" IRS. JA 101.

In 1985, the IRS issued an assessment for underpayment of taxes in 1981, 1982, and 1983. About five years later, the parties reached a settlement. In settling, the parties agreed the LaRosas had *underpaid* for those three tax years but also that they had *overpaid* for tax years 1984 and 1985.

The settlement created a situation in which both sides owed each other money. The LaRosas owed the IRS the amounts they underpaid for tax years 1981, 1982, and 1983— plus interest on each year's underpayment amounts (underpayment interest) and penalties. See 26 U.S.C. §§ 6601(a), 6621 (requiring interest payments and setting the interest rate). For its part, the IRS owed the LaRosas the amounts they overpaid for tax years 1984 and

2

1985—plus statutorily imposed interest on those overpaid amounts (overpayment interest). See § 6611.

Although the parties agreed—and continue to agree—about how much the LaRosas underpaid or overpaid for each of the five tax years (think: the principal amounts), disputes persisted about the corresponding interest amounts.

At first, the IRS calculated one set of figures, which (according to the tax court) helped generate a net liability for the LaRosas of just over $3.6 million. The LaRosas paid that full amount but also requested a refund, asserting the IRS overcalculated the interest they owed. The IRS initially denied that claim but changed its tune "after hearing from the LaRosas' congressional representative." JA 101. In 1994, the agency issued a refund after recalculating both interest amounts (the underpayment interest the LaRosas owed the IRS and the overpayment interest the IRS owed the LaRosas) to the LaRosas' benefit.

Soon after, the IRS reversed course again, concluding the 1994 refund was a mistake and its initial interest calculations were right all along. In 1996, the government filed a refund suit against the LaRosas in federal district court under 26 U.S.C. § 7405. The district court granted summary judgment to the government and ordered the LaRosas to repay the 1994 refund (plus additional interest accrued on the erroneously refunded amount). See *United States v. LaRosa*, 993 F. Supp. 907, 918 (D. Md. 1997). This Court affirmed that decision in 1998. See *United States v. LaRosa*, 155 F.3d 562 (4th Cir. 1998) (per curiam) (unpublished table decision).

For more than two decades, the LaRosas failed to comply with the district court's judgment and the IRS seemingly failed to follow up on it. Then, in 2019, the government

3

sought to foreclose on the LaRosas' house.

At that point, petitioner sought equitable relief (as an "innocent spouse") from the IRS under 26 U.S.C. § 6015(f)(1). That provision states that—in certain situations when "it is inequitable to hold" an individual taxpayer "liable for any unpaid tax or any deficiency (or any portion of either)"—the IRS "*may* relieve such individual of such liability." *Id.* (emphasis added); see also 26 C.F.R. § 301.7701-9(b) (authorizing IRS officials to perform certain functions vested in the Secretary of the Treasury). The IRS refused to process petitioner's request, stating that "no amount is currently owed" and that Section 6015(f) does not authorize "relief for erroneous refunds." JA 102 (quotation marks removed).

Petitioner then turned to the tax court, asserting the IRS erred in deciding she was ineligible for relief under Section 6015(f)(1). The tax court granted summary judgment to the IRS, concluding "[t]he erroneous refund paid to the LaRosas . . . did not give rise to an unpaid tax or a deficiency" under Section 6015(f). JA 112.

Petitioner appeals. We have jurisdiction under 26 U.S.C. § 7482(a)(1) and "review de novo the Tax Court's grant of summary judgment." *Iames v. Commissioner*, 850 F.3d 160, 163–64 (4th Cir. 2017). Finally, although the statutory framework is both technical and intricate, we must exercise our "independent judgment in determining the meaning of" Section 6015(f)(1). *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024); see, *e.g.*, *Sirius Sols., L.L.L.P. v. Commissioner*, 165 F.4th 374, 379 (5th Cir. 2026) (applying *Loper Bright* when interpreting the Internal Revenue Code).

4

II.

We hold that erroneous refunds of underpayment interest give rise to a "liability" for "unpaid tax" that is eligible for equitable relief under Section 6015(f)(1).

A.

We start, as always, with the statutory text. Section 6015(f)(1) authorizes the IRS to "relieve" a taxpayer of "liability" "for any unpaid tax or any deficiency (or any portion of either)." Petitioner does not assert this case involves a "deficiency." The only question before us is thus whether the money petitioner *currently* owes the IRS as interest on her previously underpaid tax—that is, underpayment interest—is a "liability" for "unpaid tax" within the meaning of that provision.[1]

Although Section 6015 neither defines "unpaid tax" nor expressly references interest, other provisions fill that gap. Most relevant here is 26 U.S.C. § 6601, whose caption references "[i]nterest on underpayment." That provision begins by stating that taxpayers (like petitioner) who fail to pay the full "amount of tax" owed for a given year

---

[1] Before the tax court, petitioner also claimed that overpayment interest—the other component of the erroneous refund she and her husband received in 1994—was also eligible for relief under Section 6015(f)(1). On appeal, however, petitioner has expressly disclaimed that position, see LaRosa Br. 16 n.8, and challenges only the tax court's conclusion as to underpayment interest.

Despite seemingly benefitting from that concession, the government protests that it is "*impossib*[*le*]" to "disaggregat[e] the [refund-created] liability" into underpayment interest and overpayment interest. Gov't Br. 27 (emphasis added). But no court has even attempted to do so at this point, and petitioner has pointed to an expert declaration in the government's 1996 suit that proposed one way to do so. To be clear: We reach no conclusion about the proper breakdown of underpayment interest versus overpayment interest in this case and leave all such questions for a later day.

5

also must pay "interest on such amount" at a statutorily prescribed rate. § 6601(a). A later subsection—captioned "Interest treated as tax"—instructs how such interest-payment obligations are treated under the tax code's other provisions. § 6601(e)(1). It reads:

> Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. *Any reference to this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.*

*Id.* (emphasis added).

That provision answers the only question before us. Section 6015(f)(1)(A) makes "[a]ny unpaid tax or any deficiency (or any portion of either)" eligible for relief. Section 6601(e)(1), in turn, supplies a general rule for interpreting "[a]*ny* reference . . . to *any* tax imposed by this title"—that is, any tax imposed by the Internal Revenue Code as a whole. § 6601(e)(1) (emphases added). Under that rule, Section 6015(f)(1)'s use of "tax" "shall be deemed also to refer" to any underpayment interest imposed by Section 6601(a).

## B.

The government's efforts to resist this straightforward conclusion are unavailing.

### 1.

The government asserts that Section 6601(e)(1)'s general rule that tax includes interest does not apply here. As support for that view, the government cites that provision's carve-out for uses of the word tax in "subchapter B of chapter 63, relating to deficiency procedures." 26 U.S.C. § 6601(e)(1). But the provision we are interpreting here— Section 6015(f)(1)—is not part of chapter 63, much less of subchapter B. Instead, it is contained in subchapter A of chapter 61. For that reason, the carve-out does not apply in

6

interpreting the meaning of "tax" in Section 6015(f)(1).

2.

The government's next argument focuses on the meaning of "unpaid." Recall the LaRosas previously paid the underpayment interest the IRS now seeks to collect and the only reason we are here is because the IRS erroneously gave it back. The government asserts that the LaRosas' previous payment "extinguished" petitioner's tax liability for the relevant years and the government's later refund could not "revive" it as unpaid tax. Gov't Br. 16–17. As support for this argument, the government relies primarily on the Eleventh Circuit's decision in *Bilzerian v. USA*, 86 F.3d 1067 (11th Cir. 1996) (per curiam).

But *Bilzerian* was not a case about Section 6015(f)(1) or the meaning of the words "unpaid tax." The issue before us turns on how to *characterize* the money petitioner owes the government. In contrast, the dispute in *Bilzerian* involved the *procedures* the IRS must follow when collecting money from a taxpayer. The Eleventh Circuit held that, when the IRS issues an assessment so that it may collect on a particular tax liability and the taxpayer then fully satisfies that liability, that *assessment* "is extinguished and . . . the proper procedure for the IRS to collect an erroneous refund is a refund suit under section 7405 or a new assessment, including a new notice of deficiency." *Bilzerian*, 86 F.3d at 1069. And to the extent a stray sentence in *Bilzerian* can be read to sweep more broadly, we agree with the Sixth Circuit: That language was "dicta." *Greer v. Commissioner*, 557 F.3d 688, 691 (6th Cir. 2009).

Beyond overreading *Bilzerian*, we also conclude the government's argument is wrong on its own terms. The issue before us is whether petitioner has "liability" for "any

7

unpaid tax." 26 U.S.C. § 6015(f)(1). Although the IRS makes assessments—that is, "recording[s] of the amount [a] taxpayer owes"—such assessments are "essentially a bookkeeping notation." *Hibbs v. Winn*, 542 U.S. 88, 100 (2004) (quotation marks removed). In contrast, the underlying tax "liabilit[ies]" are directly "'imposed by'" the Internal Revenue Code itself. *Id.* (quoting 26 U.S.C. § 6201(a)); accord *Funkhouser v. United States*, 260 F.2d 86, 87 (4th Cir. 1958) (per curiam) ("The statute itself 'imposes' the tax[.]"). Whether petitioner has any "liability" for "unpaid tax" under Section 6015(f)(1) thus turns only on whether her obligations under the tax code are currently satisfied rather than what the IRS may or may not have done in the past to collect on such obligations.

## 3.

The government's final (and primary) argument has a more big-picture flavor. Echoing the tax court, the government insists that whether a taxpayer's obligation to pay money following an erroneous refund is eligible for Section 6015(f)(1) relief turns on whether the refund was a "rebate" or a "nonrebate" refund. Gov't Br. 17; see *Singleton v. United States*, 128 F.3d 833, 838 (4th Cir. 1997) (explaining that "rebate" refunds are based "on substantive recalculations of [a taxpayer's] liability" (emphasis removed)). In the government's view: (1) only *rebate* refunds can revive a previous tax liability for Section 6015(f)(1) purposes; and (2) petitioner does not qualify because she and her husband received a nonrebate refund.

We are not persuaded that the rebate/nonrebate distinction matters here. For one thing, we see no basis for it in Section 6015(f)(1)'s text. Cf., *e.g.*, 26 U.S.C. § 6211(a)

8

(defining "deficiency" in part based on "the amount of rebates"). And, contrary to the government's suggestion, neither this Court nor any of our sister circuits have embraced the rebate/nonrebate distinction in the Section 6015(f)(1) context.[2]

Start with this Court. Like *Bilzerian*, our decision in *Singleton v. United States*, 128 F.3d 833 (4th Cir. 1997), did not involve Section 6015(f)(1) or the meaning of "unpaid tax." Instead, like *Bilzerian*, that decision addressed whether the IRS must comply with a particular procedural requirement when making an "*assessment*[] intended to reclaim" an erroneous refund. *Singleton*, 128 F.3d at 838 (emphasis added).

The government's remaining out-of-circuit decisions are similarly unhelpful.

The Sixth Circuit's decision in *Greer v. Commissioner*, 557 F.3d 688 (6th Cir. 2009), actively hurts the government's position. In *Greer*, as here, taxpayers made a payment that the IRS refunded before concluding it had erred. See *id.* at 691. The Sixth Circuit held the erroneous refund "revived" the taxpayer's "tax liability," which "became unpaid" upon the refund. *Id.* at 692 (quotation marks removed). And the court reached that result despite concluding the refund in question "[*wa*]*s not* a rebate refund"—the only type of refund the government claims can revive a previously satisfied tax liability. *Id.* (emphasis added).

The government's passing references to decisions from three other circuits are similarly misplaced. In each case, our sister circuits held a taxpayer's unpaid liability

---

[2] To forestall any possible confusion: Our holding is limited to Section 6015(f)(1). We express no view about the applicability or operation of the rebate/nonrebate distinction in any other context.

9

following an erroneous refund is an unpaid tax if that liability stems from the "statutory obligation under the tax code to pay the government." *Pacific Gas & Elec. Co. v. United States*, 417 F.3d 1375, 1381, 1383 (Fed. Cir. 2005); accord *Willson v. Commissioner*, 805 F.3d 316, 320 (D.C. Cir. 2015); see *United States v. Frontone*, 383 F.3d 656, 660–61 (7th Cir. 2004). None of those decisions endorse the government's view that the rebate/nonrebate distinction controls in determining whether petitioner has "liability" for "unpaid tax" following the IRS's erroneous 1994 refund. 26 U.S.C. § 6015(f)(1). We similarly decline to do so.

*       *       *

The government insists Congress did not intend to make debts taxpayers owe after receiving erroneous refunds of underpayment interest eligible for Section 6015(f)(1) relief. But "no amount of policy-talk can overcome plain statutory text." *Julmice v. Garland*, 29 F.4th 206, 210 (4th Cir. 2022) (alterations and quotation marks removed). "The question here is not whether [petitioner] should be granted [equitable relief] as a matter of executive discretion—it is whether Congress has forbidden [such relief] via legislative command." *Id.* at 210. Because the answer is no, we vacate the tax court's judgment and remand for further proceedings consistent with this opinion.[3]

---

[3] We hold only that erroneous refunds of underpayment interest give rise to "unpaid tax" eligible for equitable relief under Section 6015(f)(1). The parties also dispute whether since-accumulated interest on the erroneously refunded underpayment interest also qualifies as Section 6015(f)(1) "unpaid tax" liability. But they never litigated that question in the tax court because the government argued for (and the tax court granted) dismissal of LaRosa's entire petition on the ground that *no* part of the erroneous refund gave rise to any unpaid tax. "[B]ecause we are a court of review, not of first view," *Moses Enters., LLC, v.* (Continued)

*SO ORDERED*

---

*Lexington Ins. Co.*, 66 F.4th 523, 529 (4th Cir. 2023) (quotation marks removed), we leave it to the tax court to decide in the first instance whether interest on erroneously refunded underpayment interest is also eligible for equitable relief under Section 6015(f)(1).